**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| BARRY J. BELMONT, ET AL., | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No.  09-cv-04951 |
| MB INVESTMENT PARTNERS, INC., ET AL., | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT
RONALD L. ALTMAN**

Samuel W. Silver (I.D. No. 56596)
Joseph J. Langkamer (I.D. No. 208286)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2309; 2834
Facsimile: (215) 751-2205

Alan T. Gallanty (admitted *pro hac vice*)
KANTOR DAVIDOFF WOLFE MANDELKER
TWOMEY & GALLANTY P.C.
51 East 42nd Street, 17th Floor
New York, NY 10017
Telephone: (212) 682-8383
Facsimile: (212) 949-5206

Dated: February 1, 2010                    *Attorneys for Defendant Ronald L. Altman*

## TABLE OF CONTENTS

Table of Authorities....................................................................................................iii

Preliminary Statement ..............................................................................................1

The Complaint............................................................................................................3

Argument ...................................................................................................................8

    Point I:

        The Applicable Standard Of Review ......................................................8

    Point II:

        Plaintiffs Have Failed To State A Claim
        Under Section 10(b) And Rule 10b-5……………………………………………....10

           A.  Plaintiffs' Securities Fraud Claim Must
               Satisfy The Heightened Pleading Requirements
               Of FRCP 9(b) And The Private Securities
               Litigation Reform Act – And Fails To Do So…………………………………11

           B.  Plaintiffs Have Not, And Cannot, Plead The
               Requisite Scienter With Respect To Altman…………………………………..13

           C.  Plaintiffs Have Likewise Failed To Adequately
               Allege A Misrepresentation By Altman……………………………………15

           D.  Plaintiffs Have Also Failed To Adequately
               Allege Any Connection Between Any Act By
               Altman And The Purchase Or Sale Of A Security
               Or Any Loss Arising Therefrom…………………………………………17

  Point III:

        Plaintiffs Have Failed To State A Claim
        Against Altman Under The Pennsylvania
        Unfair Trade Practices And Consumer
        Protection Law…………………………………………………………………19

Point IV:

     Plaintiffs Have Failed To State A Claim
     Against Altman For Breach Of Fiduciary
     Duty………………………………………………………………………………......20

Conclusion .................................................................................................................. 23

# TABLE OF AUTHORITIES

<u>Cases</u>

*Advanta Corp. Sec. Litig.*
    180 F.3d 525 (3d Cir. 1999) ....................................................................... 12

*Arnold v. Stein Roe & Farnham*
    2006 WL 851303 (E.D. Pa. 2006) ............................................................. 20

*Ashcroft v. Iqbal*
    129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .............................................1, 8, 9

*Baker v. Family Credit Counseling Corp.*
    440 F.Supp.2d 392 (E.D. Pa. 2006) ........................................................... 20

*Beck v. Arcadia Capital Group, Inc.*
    2009 WL 3152184 (E.D. Pa. 2009) ...............................................8, 9, 10, 15

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .....................1, 3, 8, 9

*California Public Employees' Retirement System v. Chubb Corp.*
    394 F.3d 126 (3d Cir. 2004) ...................................................................... 16

*City of Harrisburg v. Bradford Trust Co.*
    621 F.Supp. 463 (M.D. Pa. 1985) .............................................................. 21

*Clark v. Comcast Corp.*
    582 F.Supp.2d 692 (E.D. Pa. 2008) ........................................................... 16

*Grimm v. Discover Financial Services*
    2008 WL 4821695 (W.D. Pa. 2008) ................................................19, 20, 22

*GSC Partners CDO Fund v. Washington*
    368 F.3d 228 (3d Cir. 2004) ...................................................................... 14

*Institutional Investors Group v. Avaya, Inc.*
    564 F.3d 242 (3d Cir. 2009) ...................................................................... 14

*Leder v. Shinfeld*
    609 F.Supp.2d 386 (E.D. Pa. 2009) ........................................................... 21

*Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*
    652 F.Supp.2d 576 (E.D. Pa. 2009) ..................................2, 8, 9, 10, 11, 12, 14

*Majer v. Sonex Research, Inc.*
    541 F.Supp.2d 693 (E.D.Pa. 2008) ................................................. 13, 14, 16

*Mill Bridge V, Inc. v. Benton*
    2009 WL 4639641 (E.D.Pa. 2009) ................................................. 15, 16, 17

*Morse v. Lower Merion Sch.Dist.*
    132 F.3d 902 (3d Cir. 1997) ........................................................... 9

*NAHC, Inc. Sec. Litig.*
    306 F.3d 1314 (3d Cir. 2002) ......................................................... 12

*NAHC, Inc. Sec. Litig.*
    2001 WL 1241007 (E.D. Pa. 2001)..................................................15, 16

*Nutrisystem, Inc. Securities Litigation*
    653 F.Supp.2d 563 (E.D. Pa. 2009) ............................................. 10, 13, 14

*Seldon v. Home Loan Services, Inc.*
    647 F.Supp.2d 451 (E.D. Pa. 2009) ................................................ 19

*Slotsky v. Roffman Miller Associates, Inc.*
    1995 WL 612592 (E.D. Pa. 1995) .................................................. 22

*Stoneridge Investment Partners, LLC v. Scientic-Atlanta, Inc.*
    552 U.S. 148, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008) .................... 10

*Suprema Specialties, Inc. Sec. Litig.*
    438 F.3d 256 (3d Cir. 2006) ........................................................... 15

*Tellabs v. Makor Issues & Rights, Ltd.*
    551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ...................13, 14

*Wenglicki v. Tribeca Lending Corp.*
    2009 WL 2195221 (E.D. Pa. 2009) ................................................ 20

*Winer Family Trust v. Queens*
    503 F.3d 319 (3d Cir. 2007) ......................................................... 12, 13, 14

*Zucker v. Ouasha*
    891 F.Supp. 1010 (D. N.J. 1995), *aff'd,* 82 F.3d 408 (3d Cir. 1996) ............................ 16

Statutes and Court Rules

15 U.S.C. §78u-4(b)(3)(A)....................................................................................... 12

Fed. R. Civ. Pro. 9(b)..........................................................................................1, 3, 7

Fed. R. Civ. Pro. 12(b)(6) .................................................................................. 1, 2

Defendant Ronald L. Altman ("Altman"), submits this memorandum in support of his Motion, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), to dismiss the claims asserted against him in plaintiffs' Complaint.

## PRELIMINARY STATEMENT

Plaintiffs' purported claims against defendant Ronald Altman are precisely the type at which the Private Securities Litigation Reform Act of 1995 and the holdings of the United States Supreme Court in *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) are directed. In short, they are without any factual support in the Complaint and are implausible on their face. Instead, supported solely by conclusory allegations and group pleading, they represent at best a futile attempt to reach beyond the facts and the law to reach an additional defendant. But under the controlling authorities, such claims cannot withstand this motion to dismiss.

Plaintiffs' Complaint alleges, at most, a fraud by a single individual, defendant Mark Bloom. While the Complaint also names Ronald Altman as a defendant, it is completely devoid of any factual allegations that would state a claim against him. Indeed, but for a few entirely conclusory references that simply parrot the elements of the claim or in general terms purport to group together Altman with the acts of defendant Bloom, there is not a single allegation that (i) Altman had any knowledge, or reason to know, of any fraud or wrongdoing; (ii) that Altman misrepresented any facts to plaintiffs or specifically identifies what such alleged misrepresentations might have been; (iii) that Altman had any part in the alleged fraud or benefited in any way therefrom; or (iv) even that Altman had any contact with, let alone made any representations to, at least four of the five plaintiffs.

1

Indeed, a review of the Complaint reveals that despite paragraph upon paragraph of allegations concerning Bloom's alleged fraud, his control over the allegedly fraudulent fund, the criminal proceedings brought against him, and the benefits he reaped from his fraud, there is not, and could not be, a single allegation that Altman participated in the fraud, had knowledge of any fraud, benefited in any way from such fraud, or was in any manner implicated, let alone mentioned, in any criminal proceedings against Bloom.[1]

Under the controlling authorities, plaintiffs have failed to state a claim against Altman under Section 10(b) and Rule 10(b)(5) for securities fraud (Count I); under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")(Count II); or for breach of fiduciary duty (Count IV).[2]

More specifically, plaintiffs have not, and cannot, state a claim under the federal securities laws because, among other things, plaintiffs have not pleaded any facts even suggesting (i) the required state of mind or "scienter" on the part of Altman; (ii) that Altman made any misrepresentation to these plaintiffs or what those particular misrepresentations were; or (iii) that any statements or representations made by Altman were relied upon or resulted in any damage to these plaintiffs.

Similarly, as further demonstrated below, the Complaint is devoid of any allegations that would support a plausible claim against Altman under the UTPCPL or for breach of a fiduciary duty to these plaintiffs.

---

[1] The Court may consider the Criminal Information filed against Bloom on this Motion to Dismiss since such documentation was specifically referenced and relied upon in the Complaint (Complaint ¶ 48). *See Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.,* 652 F.Supp.2d 576, 584 (E.D. Pa. 2009)(allowing consideration in deciding a motion under Rule 12(b)(6) of matters incorporated by reference in the complaint, items subject to judicial notice, and items appearing in the public record).

[2] The remaining counts of the Complaint are not asserted against Altman.

Under any pleading standard, let alone the requirement of "plausibility" set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly* and the explicit requirements of Rule 9(b) and the Private Securities Litigation Reform Act, plaintiffs' Complaint fails to state a claim against Altman and should be dismissed as a matter of law.

## THE COMPLAINT

The Complaint includes allegations against defendant Bloom, alleging that he committed a fraud against plaintiffs. The Complaint, however, fails to allege any specific facts justifying the assertion of any claim against Altman, let alone for securities fraud, a violation of the UTPCPL, or for breach of a fiduciary duty to these plaintiffs.

Indeed, the specific allegations of the Complaint not only belie any such claim against Altman, but render such claim entirely "implausible", requiring their dismissal.

The Complaint thus alleges against Bloom that:

- Bloom met with plaintiff Belmont to introduce himself and described the firm's conservative investment philosophy (¶ 22);

- Bloom recommended investment vehicles for plaintiff Belmont and specifically referred to North Hills as an especially appropriate investment vehicle (¶ 23);

- Bloom touted the steady positive performance of North Hills, boasting annual returns of 10-15% without significant risk (¶ 24);

- Bloom described North Hills as a fund of funds, generating consistently positive returns (¶25);

- Bloom met with plaintiff Thomas Kelly and John Wallace to discuss setting up an investment relationship for Kelly (¶28);

3

- Bloom recommended that Thomas and Frances Kelly make an investment in North Hills, which Bloom described as a fund that made diversified, conservative investments and enjoyed consistently positive returns (¶30);

- Bloom, throughout 2008, solicited John Wallace to invest in North Hills out of funds belonging to [plaintiff] PFS, describing North Hills as a fund of funds generating consistently positive returns without significant risks (¶31);

- Bloom recommended to plaintiff Gary O. Perez that he invest in North Hills, which Bloom described as conservatively managed and generating consistently positive returns of 10-12% (¶32);

- Bloom formed North Hills (¶33);

- Bloom owned North Hills' general partner and exercised almost complete control over North Hills and its investments (¶34);

- Bloom conducted North Hills' operations and completely disregarded any formalities distinguishing himself from NHM, North Hills, and other hedge fund entities he ostensibly managed, commingling funds and using them for Bloom's own purposes (¶35);

- Bloom engaged in continuous self-dealing with regard to the operations of North Hills (¶36);

- Bloom embezzled North Hills' assets for his own personal use (¶36);

- Bloom invested North Hills' assets in another fund because Bloom acted as a third-party marketer for the fund, without disclosing his (Bloom's) conflict of interest (¶36);

- Bloom misappropriated the settlement distributions from the fund (¶37);

- Bloom's investment in that fund and Bloom's ravenous spending habits left North Hills without any material assets (¶37);

4

- Bloom lost $17 million of North Hills' funds in the Refco fraud (¶38);

- Bloom never disclosed North Hills' investment in Refco nor allocated to any of the plaintiffs any of the proceeds from the Refco settlement (¶40);

- Bloom's lawyer acknowledged that Bloom had taken money out of North Hills to buy a luxury apartment in Manhattan (¶42);

- Bloom purchased multiple apartments on the Upper East and Upper West Sides of Manhattan, beach houses in the Hamptons, Florida and on the New Jersey shore, and multiple luxury cars and luxury boats with the monies he (Bloom) purloined from North Hills (¶43);

- Bloom and his wife purchased a home at 10 Gracie Square in Manhattan – a 6,200 square foot triplex with its own gymnasium – apparently using $5.2 million dollars of fund assets.   Bloom then transferred his interest in the apartment entirely to Mrs. Bloom for zero dollars.   In turn, Mrs. Bloom sold the apartment for $11.2 million, netting a lucrative return for herself and Bloom.   The millions of dollars that Bloom embezzled are monies that belonged to the investors in North Hills (¶43);

- Bloom, using the funds he (Bloom) misappropriated from North Hills, also purchased a fleet of luxury automobiles, including a 2008 BMW 328i convertible, a 2008 Land Rover SUV, a 2007 Mercedes Benz S550 sedan, a 2006 Land Rover SUV, a 2005 Mercedes Benz E500 station wagon, a 2003 Mercedes Benz E320 station wagon, a 2003 BMW 325xi sedan, a 2002 Mercedes Benz G500 SUV, and a 2002 Porsche 911 coupe.   Bloom also purchased several luxury pleasure boats, including a 2005 33-foot Thunderbird, a 2002 24-foot Monterey, and a 2001 18-foot Monterey (¶44);

- Bloom managed North Hills (¶45);

- Bloom used his own extravagant 4,000 plus square foot, 27th story penthouse in a Trump condominium building at 502 Park Avenue in Manhattan, valued at $12.6 million, as North Hills' business address (¶45);

- Bloom pleaded guilty to the counts of the Criminal Information filed against him (Bloom) by the United States Attorney, charging that Bloom:

- diverted at least $20 million from North Hills operating account and converting same to his (Bloom's) own use;

- used the amounts converted to renovate apartments and a home he (Bloom) owned, purchase hundreds of thousands of dollars of art and jewelry and spend hundreds of thousands more on parties, travel, personal services and clothing;

- misrepresented and overstated the value of North Hills investors' capital accounts in monthly statements to them;

- solicited funds from new North Hills investors in 2007 and 2008 in order to honor redemption requests from prior North Hills investors;

- misrepresented the financial condition of North Hills until his (Bloom's) arrest on February 25, 2009;

- committed fraud in connection with the sale of securities (15 U.S.C. §§ 78j(b), 78ff);

- committed mail and wire fraud with respect to funds invested with North Hills; and

- engaged in money laundering with respect to funds invested with North Hills.

(¶48).

In stark and dispositive contrast, despite charging Altman with securities fraud, the Complaint does not have a single factual allegation indicating that Altman had any knowledge of Bloom's wrongdoing, that he had any control or involvement with North Hills, that he was involved in any embezzlement or fraud of any kind, that he made any specific false representation to plaintiffs about North Hills, that he benefited in any way from any of Bloom's wrongdoing, that he had control over or involvement in any North Hills' investment, that he ever even met or communicated with most of the plaintiffs, let alone made any representations to them, that there was any connection, substantively or temporally between any alleged misrepresentation by Altman and plaintiffs' alleged investments in North Hills, and most revealingly, that Altman was in any way implicated, referenced or even mentioned in any criminal proceedings, against Bloom or otherwise.

Instead, notwithstanding the pleading standards set forth by the United States Supreme Court and under Rule 9(b) and the PSLRA, plaintiffs only make the following conclusory allegations against Altman[3]:

- "Defendants Bloom and Altman prepared a proposed asset allocation dated July 12, 2006 on MB's letterhead that showed 20% of Barry Belmont's investment allocated to North Hills and presented it to Mr. Belmont" (¶26).

- "A few weeks after the June 13, 2006 meeting, plaintiff Barry Belmont and John Wallace met with defendants Mark Bloom and Ronald Altman, a partner and portfolio manager of MB. Altman repeated the descriptions of MB's and North Hill's performance and practices. Altman also stated that MB had unique access to investment vehicles such as North Hills that other firms did not enjoy" (¶27).

---

[3] While not necessary to this motion, Altman vigorously denies even these unsupported and conclusory allegations.

-   "At the urging of defendants Mark Bloom and Ronald Altman and in reliance on their representations as to North Hills' operations and performance, plaintiffs made substantial investments in North Hills" (¶55).

-   "Belmont's February 29, 2008 investment was occasioned by the directive of defendant Ronald Altman to sell Belmont's stock position (then placed by MB with Charles Schwab) because of uncertainty in the stock market and to invest the proceeds in North Hills" (¶ 56).

As detailed below, not only do such allegations not satisfy the now well-settled pleading requirements for a securities fraud claim, but they do not in any manner pass the plausibility standard necessary to survive a motion to dismiss.

## ARGUMENT

### POINT I

### THE APPLICABLE STANDARD OF REVIEW

The United States Supreme Court has established that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal,* 129 S.Ct. at 1949, *quoting, Bell Atlantic Corp. v. Twombly,* 550 U.S. at 570; *see also Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.,* 652 F. Supp.2d 576, 583 (E.D.Pa. 2009); *Beck v. Arcadia Capital Group, Inc.,* 2009 WL 3152184 (E.D.Pa. 2009).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 129 S.Ct. at 1949; *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555. The plausibility standard established by the United States Supreme Court "asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. at 1949; *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 557; *Beck v. Arcadia Capital Group, Inc.,* 2009 WL 3152184 (E.D.Pa. 2009). "To meet this standard, plaintiffs must 'nudge their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 570.

The Supreme Court has emphasized two principles directly applicable here. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 129 S.Ct. at 1949; *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555; *see also Morse v. Lower Merion Sch.Dist.,* 132 F.3d 902, 906 (3d Cir. 1997); *Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.,* 652 F. Supp.2d at 583-584. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* 129 S.Ct. at 1950; *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 556. The mere "possibility of misconduct" is insufficient to withstand such a motion. *Id.*

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully; a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, ---U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *citing Twombly*, 550 U.S. at 556, 570; *Miles v. Township of Barnegal*, No. 08-1387, 2009 U.S.App. LEXIS 20004 at *9 (3d Cir. Sept. 4, 2009). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal, supra, quoting Twombly*, 550 U.S. at 557.

*Beck v. Arcadia Capital Group, Inc.*, 2009 WL 3152184 (E.D.Pa. 2009).

As demonstrated herein, the allegations in the Complaint do not plausibly implicate wrongdoing by Altman and, therefore, are insufficient as a matter of law to state a viable claim.

Under the applicable standard of review as established by the United States Supreme Court, plaintiffs' claims against Altman therefore must be dismissed.

## POINT II

## PLAINTIFFS HAVE FAILED TO STATE A
## CLAIM UNDER SECTION 10(b) AND RULE 10b-5

To state a claim under section 10(b) and Rule 10b-5, a plaintiff must prove:

(1) a material misrepresentation or omission by the defendant;

(2) scienter;

(3) a connection between the misrepresentation or omission and the purchase or sale of a security;

(4) reliance upon the misrepresentation or omission;

(5) economic loss; and

(6) loss causation.

*Beck v. Arcadia Capital Group. Inc.*, 2009 WL 3152184 (E.D. Pa. 2009), *quoting, Stoneridge Investment Partners, LLC v. Scientic-Atlanta, Inc.,* 552 U.S. 148, 128 S.Ct. 761, 768, 169 L.Ed.2d 627 (2008).

Here, plaintiffs have not pled, and cannot plead, the required elements of such a claim against Altman and, consistent with repeated decisions of the courts of this District in recent months, Count I of the Complaint must be dismissed as against Altman as a result.  *See, e.g., Beck v. Arcadia Capital Group. Inc.*, 2009 WL 3152184 (E.D. Pa. 2009); *Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*, 652 F.Supp.2d 576, 584 (E.D.Pa. 2009); *In Re Nutrisystem, Inc. Securities Litigation*, 653 F.Supp.2d 563 (E.D. Pa. 2009).

A. **Plaintiffs' Securities Fraud Claim Must Satisfy The Heightened Pleading Requirements Of FRCP 9(b) And The Private Securities Litigation Reform Act - - And Fails To Do So**

To survive a motion to dismiss, in addition to having to plead a "plausible" claim to satisfy the requirements set forth by the United States Supreme Court in *Twombly*:

> Plaintiffs' securities fraud claim must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4. *See, In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir.2006) (noting that plaintiffs alleging fraud under the Exchange Act must comply with the heightened pleading requirements of both Rule 9(b) and the PSLRA); *Clark v. Comcast Corp.*, 582 F.Supp.2d 692, 703 (E.D.Pa 2008) (noting same) (*citing In re Rockefeller Ctr. Props., Inc., Sec. Litig.*, 311 F.3d 198, 217 (3d Cir.2002)).

*Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 584 (E.D.Pa. 2009).

The requirements of Rule 9(b) are to be rigorously applied to plaintiffs' securities fraud claims:

> Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* The Third Circuit has repeatedly noted that "this particularly requirement has been rigorously applied in securities fraud cases." *In re Rockefeller Ctr.*, 311 F. 3d at 216 (citation omitted).

652 F.Supp. 2d at 584.

In addition, plaintiffs' claims must satisfy the more stringent standards of the Private Securities Litigation Reform Act:

> In addition to Rule 9(b), the PSLRA "imposes another layer of factual particularity to allegations of securities fraud." *In re Rockefeller Ctr.*, 311 F.3d at 217; *see also Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir.2004)(noting that securities fraud plaintiffs "must also comply with the heightened pleading requirements of the PSLRA"); *Majer v. Sonex Research, Inc.*, 541 F. Supp.2d 693, 703 (E.D.Pa. 2008) ("The PSLRA heightened the pleading requirements in private securities actions.").

652 F.Supp.2d at 584-585.

> The PSLRA specifically provides that:

> The complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).

> As the Third Circuit has concluded:

> The Private Securities Litigation Reform Act of 1995 requires plaintiffs in a private securities action to specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity. 15 U.S.C. § 78u-4(b) (1)(B). Importantly, the PSLRA requires the applicable mental state be pleaded with particularity. *See Id.* ("[T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.").

*Winer Family Trust v. Queens*, 503 F.3d 319, 326 (3d Cir. 2007); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1328 (3d Cir. 2002) (noting that securities fraud plaintiffs must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" (*quoting In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 530 (3d Cir. 1999)).

> The Third Circuit "has held repeatedly that the intent of Congress was to 'substantially heighten the existing pleading requirements' in securities fraud actions." *Clark,* 582 F. Supp.2d at 704 (*quoting In re Rockefeller Ctr.*, 311 F.3d at 217).

652 F. Supp.2d at 585 ("If this particularity requirement is not met, 'the court shall … dismiss the complaint.' 15 U.S.C. §78u-4(b)(3)(A)").

What is more, and particularly decisive here, all such allegations must be separately and specifically alleged as to each defendant:

> Where Rule 10b-5 claims are brought against multiple defendants, a pleading must specify the role of each defendant and their connection to the misstatements or omissions.

*In Re Nutrisystem, Inc. Securities Litigation*, 653 F.Supp.2d 563 (E.D. Pa. 2009); *Winer Family Trust v. Queen*, 503 F.3d 319, 336 (3d Cir. 2007) ("The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions").

> Rule 9(b) requires that a plaintiff show that the person responsible for the misstatement or omission alleged had knowledge of its false or misleading character at the time. *Id.* at 216. The PSLRA's particularity requirement applies to all allegations and covers both scienter and allegations of a statement's falsity. *Avaya,* 564 F.3d at 263.

*In re Nutrisystem, Inc. Securities Litigation*, 653 F.Supp.2d 563 (E.D.Pa.2009).

## B. **Plaintiffs Have Not, And Cannot, Plead The Requisite Scienter With Respect To Altman**

In accordance with the holding of the United States Supreme Court in *Tellabs v. Makor Issues & Rights., Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), this Court has made clear that the PSLRA specifically raised the requirements for pleading the requisite element of scienter in a securities fraud case:

> The PSLRA also heightened the standard for pleading scienter. 15 U.S.C. §78u-4(b)(2). With respect to each act or omission, a plaintiff must: 1) specify each statement alleged to have been misleading and the reasons why it is misleading; and 2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *Id., Tellabs v. Makor Issues & Rts., Ltd.*, --- U.S. ----, ----, 127 S.Ct. 2499, 2508, 168 L.Ed.2d 179 (2007). According to the *Tellabs* Court, the strong inference standard unequivocally raised the bar for pleading scienter. The inference must be more than merely reasonable or permissible. The Court held that a complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference that could be drawn from the facts alleged. *Id* .at 2509.

*Majer v. Sonex Research, Inc.*, 541 F.Supp.2d 693, 704 (E.D.Pa. 2008).

> To survive a motion to dismiss, the inference of scienter must be cogent and at least as compelling as any competing nonculpable inference plausibly drawn from the facts alleged and taken as a whole.

*In re Nutrisystem, Inc. Securities Litigation*, 2009 WL 2776481 (E.D.Pa. 2009), *citing Tellabs v. Makor Issues & Rights, Ltd.*, 127 S.Ct. at 2508.

In evaluating the sufficiency of a securities fraud claim, the court must take into account plausible nonculpable opposing inferences in determining whether the plaintiff's proposed inference of scienter is "strong" within the meaning of the PSLRA, i.e., whether a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Tellabs v. Makor Issues & Rights, Ltd.*, 127 S.Ct. at 2507-08; *see also In re Nutrisystem, Inc. Securities Litigation*, 2009 WL 2776481 (E.D.Pa. 2009).

Allegations that the defendant "knew" or "must have known" that statements were fraudulent are insufficient. *Majer v. Sonex Research, Inc.*, 541 F.Supp.2d 693, 708 (E.D.Pa. 2008), *quoting GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004).

Similarly, facts establishing motive and opportunity to commit fraud no longer serve to establish scienter. *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 276-277 (3d Cir. 2009); *Luminent Mortgage Capital, inc. v. Merrill Lynch & Co.*, 652 F.Supp.2d 576, 586 (E.D.Pa. 2009), In re *Nutrisystem, Inc. Securities Litigation*, 653 F.Supp.2d 563 (E.D.Pa. 2009).

The PSLRA also requires that plaintiffs specify the role of each defendant, demonstrating each defendant's involvement in the alleged misstatements and omissions. Any 10b-5 claim must be pleaded with the specificity required by the PSLRA with respect to each defendant. *Winer Family Trust v. Queen*, 503 F. 3d 319, 335-337 (3d Cir. 2007); *Luminent Mortgage Capital, inc. v. Merrill Lynch & Co.*, 652 F.Supp.2d 576, 586 (E.D.Pa. 2009).

14

Here, plaintiffs do not offer a single factual allegation to support the necessary element of scienter as to Altman.   There is no allegation that Altman knew or had reason to know of Bloom's wrongdoing, that he participated in such wrongdoing in any way, or that he had any participation in or control over the operations of North Hills.   In fact, the specific allegations of the Complaint confirm the exact opposite, indicating that the fund was formed, owned, operated and controlled entirely by Bloom (Complaint ¶¶33, 34, 35, 45); that Bloom alone committed embezzlement, self-dealing and other wrongdoing with respect to the fund (Complaint ¶¶35, 36, 37, 38, 40, 42); that Bloom alone benefited from his fraud  (Complaint ¶¶42, 43, 45); and that Bloom and Bloom alone was charged and pleaded guilty to such fraud and misconduct (Complaint ¶48).   As a result, the Complaint itself is replete with specific facts that not only make any cogent inference of scienter as to Altman impossible, but render plaintiffs' securities fraud claims completely implausible as well.

On this basis alone, plaintiffs' securities law claims against Altman must be dismissed.

## C.  Plaintiffs Have Likewise Failed To Adequately Allege A Misrepresentation By Altman

Under the PSLRA, with respect to each act or omission, plaintiffs must (1) identify each statement alleged to have been misleading and (2) specify the reasons why it was misleading. *Beck v. Arcadia Capital Group, Inc.,* 2009 WL 3152184 (E.D. Pa. 2009); *Mill Bridge V, Inc. v. Benton*, 2009 WL 4639641 (E.D.Pa. 2009); *In re NAHC, Inc. Securities Litigation*, 2001 WL 1241007 (E.D.Pa. 2001).

Plaintiffs also must "identify the source of the allegedly fraudulent misrepresentation or omission." *Mill Bridge V, Inc. v. Benton*, 2009 WL 4639641 (E.D.Pa. 2009), *quoting In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 276 (3d Cir. 2006).

What is more, a securities fraud claim cannot rest on the failure to disclose future events, particularly when such events are solely within the control of a third party, in this case Bloom. "To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *In re NAHC, Inc. Securities Litigation,* 2001 WL 1241007 (E.D. Pa. 2001), *citing Zucker v. Ouasha,* 891 F.Supp. 1010, 1017 (D. N.J. 1995), *aff'd,* 82 F.3d 408 (3d Cir. 1996).

> 'Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.' *Nice Systems,* 135 F.Supp.2d at 586. The plaintiffs have alleged no particularized facts to support the conclusory statement that the [Defendants] knew or anticipated that these events would occur.

*In re NAHC, Inc. Securities Litigation,* 2001 WL 1241007 (E.D. Pa. 2001); *see also Majer v. Sonex Research, Inc.,* 541 F.Supp.2d 693, 706 (E.D. Pa. 2008)("representations about possible future events that are contingent on the actions of a third party are immaterial").

Unspecified references to a written document likewise cannot satisfy the pleading requirements for a securities fraud claim:

> A plaintiff relying on internal reports must 'specify the internal reports, who prepared them and when, how firm the numbers were or which company officers reviewed them' … plaintiffs' barebones sketch of this internal memo utterly fails to meet this standard [under 9(b) and the PSLRA] in any respect.

*California Public Employees' Retirement System v. Chubb Corp.,* 394 F.3d 126, 147-148 (3d Cir. 2004); *Clark v. Comcast Corp.,* 582 F.Supp.2d 692, 705 (E.D. Pa. 2008)("Reliance upon alleged documents which are undated, unquoted, undescribed, and unattached amounts to nonspecific allegations at best"); *Mill Bridge V, Inc. v. Benton,* 2009 WL 4639641 (E.D.Pa. 2009):

> [T]he complaint "fails to allege what, if any, [Defendant's] precise participation was in the Info Memo's production and/or how [Defendant]

could be considered the source of any statements within the Info Memo. Indeed, nothing in this document suggests either that [Defendant] wrote or proposed the inclusion of these two statements or that she exercised control over the preparation of the document … As Plaintiff has failed to attribute either of these alleged misstatements directly to [Defendant], they cannot serve as the basis for Rule 10b-5 liability.

*Id.*

Here, plaintiffs' claims suffer from an additional and more basic infirmity, since they fail to attach the report and do not even attempt to identify what statements were actually contained in the document, let alone how they were false or misleading or what role Altman had in preparing such statements.

In short, the complete absence of any factual allegations in the Complaint demonstrating what Altman said or how what he said was in any way fraudulent likewise requires the dismissal of plaintiffs' securities fraud claims against Altman.

**D.** **Plaintiffs Have Also Failed To Adequately Allege Any Connection Between Any Act By Altman And The Purchase Or Sale Of A Security Or Any Loss Arising Therefrom**

In addition to failing to even allege any facts plausibly demonstrating the requisite scienter on the part of Altman or that he made any misrepresentations actionable under 10b-5, the Complaint fails to allege any plausible connection between any alleged misrepresentation by Altman and the plaintiffs' purchase of securities or their alleged loss resulting therefrom.

First, the Complaint does not offer a single allegation that Altman had any contact with plaintiffs Perez, Francis Kelly, or Thomas Kelly, let alone that he made any misrepresentations of any kind to any of them.

Second, with respect to plaintiff PFS, the only contact alleged is a single meeting sometime in June, 2006 with John Wallace, who is elsewhere alleged to be the sole member of PFS (Complaint ¶¶ 6, 27). However, not only is there no allegation that Wallace was

representing PFS in that meeting or that PFS was even mentioned or discussed, there also is no allegation of anything specifically said by Altman that was in any way false or misleading.  Even more to the point, however, the Complaint later explicitly and necessarily admits that the only purchases by PFS occurred in September and November of 2008, over two (2) years after the alleged meeting with Wallace.  It is implausible that anything said by Altman in 2006 could have lead to the purchases by PFS over two (2) years later, particularly in light of plaintiffs' allegations that in the interim, "throughout 2008, Mark Bloom solicited John Wallace … to make an investment in North Hills out of funds belonging to PFS."  (Complaint ¶ 31).

Third, it is absolutely clear from plaintiffs' own allegations and the criminal Information and guilty plea to which plaintiffs refer in their pleading (Complaint at ¶48) that the cause of their loss was the embezzlement and criminal fraud perpetrated by Bloom. This intervening cause had nothing inherently to do with the North Hills fund itself, or its investment philosophy, or anything else that even theoretically could have been the subject of any discussion involving Altman.  And, there is not a single allegation either in plaintiffs' Complaint or in the Criminal Information referred to therein that Altman was in any way, shape or form involved in such wrongdoing, benefited thereby, or had any knowledge thereof.

Under such circumstances, plaintiffs claims that they purchased securities in reliance on the misrepresentations of Altman and suffered a loss as a result thereof is entirely implausible and, under the controlling authorities, likewise requires that such claims must be dismissed.

**POINT III**

**PLAINTIFFS HAVE FAILED TO STATE A
CLAIM AGAINST ALTMAN UNDER THE PENNSYLVANIA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW**

Plaintiffs' purported claim against Altman under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") suffers from many of the same infirmities as their securities fraud claim. In short, the complaint fails to specifically allege any false representation or deceptive conduct by Altman on which plaintiffs relied and suffered a loss as a result thereof.

> This Court has held that plaintiffs still must demonstrate the requirements of *any* claim brought under UTP/CPL, as espoused by the Pennsylvania Supreme Court: (1) that the Defendant made a false misrepresentation or engaged in deceptive conduct; (2) which the Plaintiffs justifiably relied upon; and (3) suffered loss as a result of such reliance.

*Grimm v. Discover Financial Services,* 2008 WL 4821695 (W.D.Pa. 2008). These are the requisite elements of a claim under the UTPCPL and plaintiffs' failure to allege facts plausibly supporting such a claim require its dismissal as well. *Id.*

As demonstrated above, plaintiffs have not alleged, and cannot allege, any facts to support a claim against Altman based on a fraudulent misrepresentation. In order to state a claim for a deceptive act, plaintiffs must allege "the act of *intentionally* giving a false impression" or "a tort arising from a false representation made *knowingly* or *recklessly* with the *intent* that another person should detrimentally rely on it." *Seldon v. Home Loan Services, Inc.,* 647 F.Supp.2d 451, 469 (E.D. Pa. 2009). Here, as detailed above, there is no plausible allegation that Altman made any such misrepresentation, knew anything about Bloom's wrongdoing, in any manner intended to mislead plaintiffs, or that plaintiffs relied, justifiably or otherwise, on any misrepresentations made by Altman.

Under these circumstances, this court has dismissed claims under the UTPCPL:

> Plaintiff does not specify any material misrepresentation made by [Defendant]. Plaintiff does not allege that [Defendant] made a false representation with knowledge of its falsity. Plaintiff does not allege that he relied on any [such] false statement. Indeed, Plaintiff fails to allege any underlying financial scheme or practice or that Defendant benefited in any way from such practice. … Because Plaintiff has failed to adequately plead the necessary elements to state a claim under the UTPCPL, the Complaint must be dismissed.

*Arnold v. Stein Roe & Farnham,* 2006 WL 851303 (E.D. Pa. 2006); *see also Wenglicki v. Tribeca Lending Corp.,* 2009 WL 2195221 (E.D. Pa. 2009).

> [Plaintiff] fails to state a UTPCPL claim because he has not alleged 'with particularity the elements necessary to support a violation … as to a particular Defendant.' *Morilus,* 2007 WL 1810676, 5. No actions by defendants that would result in a UTPCPL violation are alleged.

*Id.*

The same reasoning applies to plaintiffs' alleged claims against Altman under the UTPCPL. There simply are no facts alleged that would plausibly support such a claim, which therefore must be dismissed.

## POINT IV

### PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST ALTMAN FOR BREACH OF FIDUCIARY DUTY

To state a claim for breach of fiduciary duty, plaintiffs must allege:

> (1) the existence of a confidential or fiduciary relationship; (2) the defendant's failure to act in good faith and solely for the benefit of the plaintiff with respect to matters within the scope of the confidential or fiduciary relationship; and (3) an injury to the plaintiff proximately caused by the defendant's failure to act.

*Grimm v. Discover Financial Services,* 2008 WL 4821695 (W.D. Pa. 2008), *citing Baker v. Family Credit Counseling Corp.,* 440 F.Supp.2d 392, 414-415 (E.D. Pa. 2006).

What is more, "it is not enough to show that the plaintiff reposed its trust in the defendant [an allegation likewise absent in plaintiffs' Complaint]; the latter must also have accepted the

fiduciary relationship." Id.; *see also City of Harrisburg v. Bradford Trust Co.*, 621 F.Supp. 463, 473 (M.D. Pa.1985).

> Plaintiffs fail to allege, however, that Defendant Shinfeld ever manifested assent to a fiduciary or agency relationship.
>
> * * *
>
> In the absence of an allegation that Defendant assented to a direct fiduciary or agency relationship with Plaintiffs, Plaintiffs' allegation of a breach of fiduciary duty cannot stand. Count Six must therefore be dismissed.

*Leder v. Shinfeld,* 609 F.Supp.2d 386, 400 (E.D. Pa. 2009).

Plaintiffs' purported claim for breach of fiduciary duty against Altman thus fails as a matter of law for at least the following reasons:

1.      There is no allegation whatsoever of any contact or relationship between Altman and plaintiffs PFS, Thomas Kelly, Frances Kelly or Gary Perez, let alone a fiduciary one, or of any facts constituting a breach of such a relationship between these parties.  As a result, there is absolutely no conceivable basis in the Complaint for any breach of fiduciary duty claim against Altman by these plaintiffs;

2.      There is no allegation that there was ever a direct fiduciary relationship entered into between any plaintiff and Altman;

3.      Perhaps most fundamentally, there is no factual allegation of any actions by Altman that would constitute a breach of any duty owed to plaintiffs; and finally,

4.      The factual allegations that are contained in the Complaint make it absolutely clear that the cause of plaintiffs' alleged losses was the intervening and independent wrongdoing of defendant Bloom and was not, and could not be, any alleged breach of any duty by Altman.

For at least these reasons, plaintiffs' breach of fiduciary duty claims against Altman likewise must be dismissed. *Grimm v. Discover Financial Services,* 2008 WL 4821695 (W.D. Pa. 2008); *Slotsky v. Roffman Miller Associates, Inc.,* 1995 WL 612592 (E.D. Pa. 1995).

## CONCLUSION

Based on the arguments and authorities set forth above, it is respectfully submitted that plaintiffs' claims against defendant Ronald L. Altman should be dismissed in their entirety.

Dated: February 1, 2010

/s/ Samuel W. Silver
Samuel W. Silver (I.D. No. 56596)
Joseph J. Langkamer (I.D. No. 208286)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2309; 2834
Facsimile: (215) 751-2205

Alan T. Gallanty (admitted *pro hac vice*)
KANTOR DAVIDOFF WOLFE MANDELKER
TWOMEY & GALLANTY P.C.
51 East 42nd Street, 17th Floor
New York, NY 10017
Telephone: (212) 682-8383
Facsimile: (212) 949-5206

*Attorneys for Defendant Ronald L. Altman*

## CERTIFICATE OF SERVICE

I, Joseph J. Langkamer, hereby certify that on this 1st day of February, 2010, I

caused a true and correct copy of the foregoing Motion to Dismiss of Defendant Ronald L.

Altman and accompanying Memorandum of Law to be served on the following persons via ECF

(with the exception of Mark E. Bloom) and first-class mail:


Paul C. Madden, Esq.
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 South 16th Street, Suite 3200
Philadelphia, PA 19102
*Attorney for Plaintiffs*

Peter J. Hoffman, Esq.
Maureen P. Fitzgerald, Esq.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street – 22nd Floor
Philadelphia, PA 19102
*Attorneys for Defendants MB Investment,*
*Partners, Inc., Robert M. Machinist, P.*
*Benjamin Grosscup, Thomas Barr, Christine*
*Munn, and Robert Bernhard*

Edward D. Kutchin, Esq.
Kerry R. Northup, Esq.
Kutchin & Rufo PC
Two Center Plaza, Suite 620
Boston, MA 02108-1906
*Attorneys for Defendants MB Investment,*
*Partners, Inc., Robert M. Machinist, P.*
*Benjamin Grosscup, Thomas Barr, Christine*
*Munn, and Robert Bernhard*

Michael M. Mustokoff, Esq.
Teresa N. Cavenagh, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
*Attorneys for Defendants Centre MB Holdings,*
*Centre Partners Managements, LLC, Lester*
*Pollack, William Tomai, Guillame Bebear, and*
*Bruce Pollack*

Mark E. Bloom
502 Park Avenue
New York, NY 10022


/s/ Joseph J. Langkamer
Joseph J. Langkamer