**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BARRY J. BELMONT, ET AL.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>MB INVESTMENT PARTNERS, INC., ET AL.,<br><br>　　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:    Civil Action No.  09-cv-04951<br>:<br>:<br>:<br>:<br>: |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF MOTION TO DISMISS OF DEFENDANT RONALD L. ALTMAN**

---

Samuel W. Silver (I.D. No. 56596)
Joseph J. Langkamer (I.D. No. 208286)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2309; 2834
Facsimile: (215) 751-2205

Alan T. Gallanty (admitted *pro hac vice*)
KANTOR, DAVIDOFF, WOLFE,
MANDELKER, TWOMEY & GALLANTY, P.C.
51 East 42nd Street, 17th Floor
New York, NY 10017
Telephone: (212) 682-8383
Facsimile: (212) 949-5206

Dated: March 15, 2010          *Attorneys for Defendant Ronald L. Altman*

## TABLE OF CONTENTS

Table of Authorities.................................................................................................ii

Preliminary Statement ............................................................................................1

Argument ................................................................................................................3

      Point I:

      The Complaint Fails To State A Claim
      For Securities Fraud Based On Recklessness .......................................................3

      Point II:

      Plaintiffs' Opposition Fails To Refute The
      Remaining Grounds Set Forth By Altman For
      Dismissal Of The Claims Against Him.................................................................7

      Point III:

      Plaintiffs' Request For Leave To Amend
      Their Complaint Should Not Be Granted …………………………………………..9

Conclusion …………………………………………………………………………..10

# TABLE OF AUTHORITIES

## Cases

*Alpharma Inc. Securities Litigation and Key Equity Investors Inc. v. Sel-Leb Marketing Inc.*
372 F.3d 137 (3d Cir. 2004) ..........................................................................2, 3, 4, 9

*Ashcroft v. Iqbal*
129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................................... 1, 7

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............................. 1

*Grimm v. Discover Financial Services*
2008 WL 4821695 (W.D. Pa. 2008) ........................................................... 9

*Key Equity Investors Inc. v. Sel-Leb Marketing Inc.*
2007 WL 2510385 (3d Cir. 2007) .....................................................2, 3, 4

*Leder v. Shinfeld*
609 F. Supp. 2d 386 (E.D. Pa. 2009) ........................................................ 9

*Securities and Exchange Commission v. Cohmad Securities Corp.*
2010 WL 363844 (S.D.N.Y. 2010) ............................................................ 5

*Tellabs v. Makor Issues & Rts., Ltd.*
551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ......................... 2, 4

## Statutes

*Private Securities Litigation Reform Act*
15 U.S.C. §78u-4 ...........................................................................1, 6, 7

Defendant Ronald L. Altman ("Altman"), submits this reply memorandum in further support of his motion, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), to dismiss the claims asserted against him in plaintiffs' Complaint and, more specifically, to address certain matters raised in Plaintiffs' Consolidated Memorandum Of Law In Opposition To Defendants' Motions To Dismiss The Complaint (the "Opposition").

## Preliminary Statement

It is now readily apparent from plaintiffs' Opposition that their entire case against Altman rests solely on the theory that he somehow acted recklessly because he did not uncover a co-worker's (Mark Bloom's) covert fraudulent scheme. Indeed, plaintiffs' do not, and cannot, point to any allegations in the Complaint that Altman (i) had any knowledge whatsoever of any fraud or wrongdoing or that any statements he allegedly made were false; (ii) benefited in any manner from Bloom's alleged fraudulent wrongdoing; or (iii) had any contact with -- let alone made any statements to -- a majority of the named plaintiffs. What is more, while plaintiffs now purport to base their claim against Altman on the premise that he somehow failed to uncover Bloom's fraud, they completely ignore the fact that Altman is the *only* defendant that plaintiffs do *not* charge with a failure to supervise Bloom[1] and repeatedly admit in their Opposition that Altman had no such responsibility (*see* pg. 5, *infra*).

Plaintiffs are thus left with no choice in their Opposition but to disregard the controlling "plausibility" standard applicable to this motion established by the Supreme Court in *Ashcroft v. Iqbal*[2] and *Bell Atlantic Corp. v. Twombly*[3]; the substantially heightened pleading requirements for asserting a securities fraud claim set forth in the PSLRA[4] and by the Supreme Court in

---

[1]  See Complaint, Counts III and IV.
[2]  129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
[3]  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
[4]  Private Securities Litigation Reform Act, 15 U.S.C. §78u-4.

*Tellabs v. Makor Issues & Rts., Ltd.*[5]; and the stringent standard for proving recklessness sufficient to constitute scienter under the federal securities laws as established by the Third Circuit in *Alpharma Inc. Securities Litigation* and *Key Equity Investors Inc. v. Sel-Leb Marketing Inc.* (*see* Point I, *infra*).

Even more tellingly, the Opposition glosses over the actual allegations of the Complaint, presenting instead arguments based on undifferentiated group accusations, overstatements of fact and paraphrasing of pleadings.[6]   Plaintiffs do so for good reason, as all of the foregoing authorities and the *actual* allegations of the Complaint, clearly establish that plaintiffs have not, and cannot, state a claim against Altman.

The overreaching nature of plaintiffs' effort to state a claim against Altman is most dramatically demonstrated by their scandalous assertion that Altman was Bloom's *"partner-in-crime"* (Opposition at 1), when their Complaint does not contain any factual allegations suggesting that Altman participated in, benefited from, or even knew of Bloom's fraud, and in the remaining forty (40) pages of their Opposition, plaintiffs offer nothing more than a baseless argument grounded in conclusory assertions and guilt by association that Altman was somehow "reckless" in not uncovering Bloom's covert and personal wrongdoing.[7] Of course, even this effort to salvage their claim against Altman falls flat – the complaint contains no allegations that could meet the standard for scienter based on recklessness necessary to sustain a 10b-5 claim under the controlling authorities.

---

[5]  551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

[6]  While plaintiffs simply reference or paraphrase the allegations of the Complaint in their Opposition, Altman specifically sets forth direct quotations of each Complaint allegation against him in his motion (*see* Altman's Memorandum at 7 – 8), demonstrating how such allegations fail to satisfy plaintiffs' burden in asserting securities fraud against him.

[7] The outrageous nature of plaintiffs' accusation is further confirmed by the fact that Altman is not even *mentioned,* let alone charged, in the voluminous criminal indictments brought against Bloom.

Despite plaintiffs' efforts to brush aside Altman's assertions that the Complaint likewise fails to allege either the causation or reliance necessary to state a claim (they go so far as to assert that these defenses were not raised by Altman, when they clearly were[8]), such infirmities in the Complaint provide a further basis for granting Altman's motion.

Finally, for the reasons set forth in Altman's Memorandum[9] and in Point II below, the Complaint likewise fails to state a claim against Altman under the UTPCPL[10] or for breach of fiduciary duty[11].

## **Argument**

### **Point I**
### **The Complaint Fails to State a Claim**
### **for Securities Fraud Based on Recklessness**

The standard for alleging a securities fraud claim based on recklessness is as follows:

> Plaintiffs attempting to satisfy their burden of pleading scienter by alleging facts establishing recklessness *must allege a statement 'involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care*, and which presents a danger of misleading buyers or sellers that is *either known to the defendant or is so obvious that the actor must have been aware of it.'* In re Advanta, 180 F.3d at 535.

*Alpharma Inc. Securities Litigation,* 372 F.3d 137, 149 (3d Cir. 2004)(emphasis added); *Key Equity Investors Inc. v. Sel-Leb Marketing Inc.,* 2007 WL 2510385 (3d Cir. 2007).

While plaintiffs attempt to disregard this high standard, the explicit requirement of an "extreme departure from the standard of ordinary care" simply is not, and cannot be, satisfied by plaintiffs' claims against Altman, let alone by the conclusory assertion that Altman should have known of the fraud. "General allegations that defendants knew or recklessly disregarded the false nature of the statements at issue are insufficient." *Alpharma Inc. Securities Litigation,* 372 F.3d

---

[8]  See Plaintiffs' Opposition at 1; Altman's Memorandum at 17 – 18.
[9]  Altman Memorandum at 19 – 22.
[10] Pennsylvania Unfair Trade Practices and Consumer Protection Law; *see* Altman Memorandum at Point III.
[11] Altman Memorandum at Point IV.

at 149; *Key Equity Investors Inc. v. Sel-Leb Marketing Inc.,* 2007 WL 2510385. "'Generalized imputations of knowledge' do not satisfy the scienter requirement 'regardless of the defendants' positions within the company.'"  *Alpharma Inc. Securities Litigation,* 372 F.3d at 149.

> The mere fact of a misstatement is not evidence of recklessness, and [plaintiff] provides no detail to support a stronger conclusion than: there must have been fraud.  We have previously rejected such conclusory pleading as precisely what the PSLRA was intended to weed out.

*Key Equity Investors Inc. v. Sel-Leb Marketing Inc.,* 2007 WL 2510385.

Indeed, the pleading requirements for alleging scienter under the PSLRA and the Supreme Court's decision in *Tellabs* apply equally to allegations of recklessness. "Plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind.'"  *Id.*   "Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible."   *Id.* at 150.  "Inferences of scienter do not survive if they are merely reasonable … Rather, inferences of scienter survive a motion to dismiss only if they are both reasonable and 'strong' inferences."  As the Third Circuit found, "at worst, the Complaint alleges little more than mismanagement. As we have previously held, such claims 'are not cognizable under federal law.'"  *Id.* at 151.  "The mere fact that the information was sent to headquarters and therefore was available for review by the individual defendants is insufficient to 'give rise to a strong inference that [defendants] acted with the required state of mind.'"…"Fraud cannot be inferred simply because [defendant] might have been more curious." *Id.* at 151.

Here, plaintiffs do not even allege that much … arguing only that Altman somehow should have known of Bloom's wrongdoing because of Bloom's lavish *personal* lifestyle, a claim made all the more ludicrous since (i) there is not a single allegation in the Complaint that Altman had any such knowledge and (ii) Altman is the one defendant *not* charged in the

Complaint with a failure to supervise Bloom.   Indeed, plaintiffs' own Opposition explicitly states:

> Bloom and Altman were able to make these representations on behalf of MB – and the MB Defendants and Altman are able to claim that they had no knowledge of Bloom's actions – *only because MB failed to supervise Bloom's activities or even conduct the minimum of due diligence into either Bloom or the North Hills investment vehicle* …  (Opposition at 14);

> In the "anything goes" management style installed by the Moving Defendants (*other than Altman*) … (Opposition at 2)(emphasis added);

> As officers and directors of MB and … of CMB's parent, the individual Moving Defendants (*other than Altman*) had duties to exercise supervisory control over MB's investment advisory personnel.  (Opposition at 6 – 7)(emphasis added).

In short, plaintiffs' own Opposition further confirms that there is no basis pled, or that could be pled, to state a claim against Altman based on recklessness.

The notion that Altman is chargeable with fraud because he did not uncover a covert scheme committed solely by a co-worker is not only contrary to the law and the facts, but is particularly unavailing under circumstances where plaintiff offers no particularized factual allegations that Altman knew, or was on notice, of such wrongdoing or benefited from such wrongdoing in any way.  As one court recently found in dismissing securities fraud claims under Rule 12(b)(6) in the face of the most notorious securities fraud of our time:

> There is nothing inherently fraudulent about referring customers to an investment adviser for fees, and the complaint does not allege statements or omissions by defendants that are fraudulent absent awareness or notice that Madoff's investment advisory business was a sham. . . In other words, one who conducts normal business activities while ignorant that those activities are furthering a fraud is not liable for securities fraud.

*Securities and Exchange Commission v. Cohmad Securities Corp.,* 2010 WL 363844 (S.D.N.Y. 2010).  As the Third Circuit concluded in language equally applicable here:

> Looked at as a whole, plaintiffs' allegations rest on nothing more than a 'series of inferences … too tenuous to amount to one of those highly unreasonable

omissions or misrepresentations that involve not merely simple or inexcusable negligence, but an extreme departure from the standards of ordinary care.

*Id.* at 151.

In addition, as detailed in Altman's Memorandum[12], there are no specific factual allegations in the Complaint sufficient to support claims based on any representations made by Altman. Plaintiffs' attempts to re-cast the allegations of the Complaint and render Altman guilty by association by omitting Altman from the *specific* allegation only to then add him to the *conclusion* based thereon, are unavailing. As just one example, plaintiffs argue in their Opposition that:

> Bloom, and later Altman (a senior managing director, partner and portfolio manager at MB), touted the performance and conservative risk features of the North Hills investment to these investors, ¶¶ 24-25, 27, and included it on MB's proposed asset allocation for Belmont. ¶26. Thomas and Frances Kelly, also investment advisory clients of MB (¶¶ 28, 29), received the same sales pitch from Bloom at MB's New York offices, ¶ 30, as did Gary Perez over the phone. ¶ 32.

(Opposition at 4 - 5).

However, a review of the *actual* Complaint reveals that paragraphs 24, 25, 28, 29, 30 and 32 make no mention of Altman *at all* nor do any of the cited paragraphs allege any contact whatsoever between Altman and Thomas Kelly, Frances Kelly or Gary Perez. Indeed, the only allegation concerning the "tout[ing] of the performance and conservative risk features of the North Hills investment to these investors" is the conclusory and unspecified allegation that Altman "repeated the [unidentified] descriptions of MB's and North Hill's performance and practices." (Complaint at ¶ 27)[13]. Nonetheless, plaintiffs conclude:

---

[12] Altman Memorandum at 15 – 17.

[13] Plaintiffs' attempted reliance on the "unquoted, undescribed, and unattached" asset allocation is likewise unavailing (*see* Altman Memorandum at 16 – 17). Indeed, plaintiffs' complete failure to even address Altman's arguments and authorities with respect to this undisclosed document is conclusive proof of its lack of probative value. In all events, plaintiffs' pleading in this regard fails entirely to satisfy the requirements of the PSLRA.

> In reliance on the representations made to them by Bloom *and Altman* on behalf of MB, Plaintiffs' investment adviser, [*all of the*] Plaintiffs made substantial investments in North Hills … (¶ 55).

(Opposition at 5)(emphasis added).

Under plaintiffs' argument, a single conclusory allegation of an unspecified statement purportedly made to one named plaintiff is converted to a sufficient basis to establish reliance by *all plaintiffs* on the purportedly fraudulent representations of Altman. In all events, a conclusory allegation that Altman "repeated" unspecified statements made by Bloom does not even begin to satisfy the pleading requirements under the PSLRA.

Such obfuscation of the actual allegations of the Complaint should not be countenanced. Instead, taking the *actual* allegations of the Complaint as a whole, as plaintiffs repeatedly ask the Court to do, it is clear that plaintiffs' claims against Altman not only fail to meet the pleading requirements of the PSLRA, but simply are not "plausible" under the holding of the United States Supreme Court in *Ashcroft v. Iqbal*, and therefore must be dismissed.

**Point II**
**Plaintiffs' Opposition Fails to Refute the Remaining Grounds**
**Set Forth by Altman for Dismissal of the Claims Against Him**

Plaintiffs in their Opposition also seek to evade both the actual arguments made by Altman and the actual allegations in their own Complaint regarding Altman with respect to reliance, causation and materiality, necessary elements of any claim for securities fraud, as well as their purported claims against Altman under the UTPCPL and for breach of fiduciary duty.

Plaintiffs' claim that Altman somehow has not raised "the usual defenses of materiality, causation and reliance"[14] is incorrect. Altman specifically set forth how the Complaint fails to

---

[14] Plaintiffs' Opposition at 1.

allege these essential elements of any claim against him.[15]   As Altman demonstrated, the fraudulent actions of Bloom in embezzling from North Hills and making fraudulent statements to all of the plaintiffs, and of failing to disclose his embezzlement that caused North Hills' collapse (all set forth at length both in plaintiffs' Complaint and the criminal indictment to which Bloom pled guilty)[16], were the material misstatements and omissions allegedly made, the misstatements and omissions on which plaintiffs allegedly relied, and the supervening cause of plaintiffs' alleged loss.  Plaintiffs' attempt to assert a cause of action by sprinkling "and Altman" here and there in a few of their allegations against Bloom is the very sort of deficient "group pleading" that fails to state a claim.

Plaintiffs likewise fail to address the substantive bases argued by Altman for dismissal of the claims brought against him under the UTPCPL, specifically that plaintiffs have failed to plead facts plausibly demonstrating that Altman made false representations or engaged in deceptive conduct, on which these named plaintiffs justifiably relied and suffered a loss as a result of such reliance.  Indeed, the Opposition further confirms that plaintiffs are unable to plausibly allege facts demonstrating the intentional, knowing or reckless conduct committed with the intent that these plaintiffs would rely thereon, necessary to state a claim under the UTPCL.  Pursuant to the points and authorities set forth in Altman's Memorandum (at 19 – 20), such claims therefore should be dismissed.

Plaintiffs' final argument, that Altman somehow breached a fiduciary duty to them by "repeating Bloom's lies", similarly evades the pleading deficiencies and governing law cited by Altman[17], namely that there are no plausible allegations in the Complaint that: (i) Altman ever entered into a fiduciary relationship with any plaintiff; (2) Altman assented to a fiduciary

---

[15] *See* Altman Memorandum at 17-18.
[16] *See* Altman Memorandum at 3-6.
[17] *See* Altman Memorandum at 20-22.

relationship with these named plaintiffs; (3) Altman failed to act in good faith with respect to these named plaintiffs; or (4) the cause of plaintiffs' losses was anything but the intervening and independent wrongdoing of Bloom, rather than any breach of duty by Altman[18].

**Point III**
**Plaintiffs' Request for Leave to Amend**
**Their Complaint Should Not Be Granted**

It is well settled in this Circuit that:

> … A District Court may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile."

*Alpharma Inc. Securities Litigation,* 372 F.3d at 153.  Citing to "the aim of the PSLRA to filter out weak claims at the early stages of litigation" and to the futility of any attempted amendment, the Third Circuit concluded:

> As we have previously held, "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory*, 114 F.3d at 1434. Thus, "[i]n assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

> Had plaintiffs satisfied the requirements of the PSLRA and merely failed to allege facts with sufficient particularity under Federal Rule of Civil Procedure 9(b) we would be presented with a closer issue. *See id* at 1435. However, because plaintiffs (1) failed to satisfy the stringent pleading requirements of the PSLRA, and thus failed to state a claim under federal securities law, and (2) failed to propose an amendment that would satisfy these requirements, we agree that leave to amend would be futile.

*Id.* at 153 – 154.

Here, plaintiffs' attempts to state a claim against Altman in their Complaint, and again in a forty (40) page Opposition, have already been shown to be without merit.  Under the applicable authorities, any attempt to replead would be "futile" and contrary to the purposes of the PSLRA.

---

[18] *See, e.g.,* Grimm v. Discover Financial Services, 2008 WL 4821695 (W.D. Pa. 2008); Leder v. Shinfeld, 609 F. Supp. 2d 386 (E.D. Pa. 2009).

## Conclusion

Based on the arguments and authorities set forth above and in Altman's initial Memorandum of Law, it is respectfully submitted that plaintiffs' claims against defendant Ronald L. Altman should be dismissed with prejudice.

Dated: March 15, 2010

Respectfully submitted,

/s/ Samuel W. Silver
Samuel W. Silver (I.D. No. 56596)
Joseph J. Langkamer (I.D. No. 208286)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2309; 2834
Facsimile: (215) 751-2205

Alan T. Gallanty (admitted *pro hac vice*)
KANTOR, DAVIDOFF, WOLFE,
MANDELKER, TWOMEY & GALLANTY, P.C.
51 East 42nd Street, 17th Floor
New York, NY 10017
Telephone: (212) 682-8383
Facsimile: (212) 949-5206

*Attorneys for Defendant Ronald L. Altman*

## CERTIFICATE OF SERVICE

I, Joseph J. Langkamer, hereby certify that on this 15th day of March, 2010, I

caused a true and correct copy of the foregoing Reply Memorandum of Law in Further Support

of Motion to Dismiss of Defendant Ronald L. Altman to be served on the following persons via

ECF (with the exception of Mark E. Bloom) and first-class mail:


Paul C. Madden, Esq.
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 South 16th Street, Suite 3200
Philadelphia, PA 19102
*Attorney for Plaintiffs*

Peter J. Hoffman, Esq.
Maureen P. Fitzgerald, Esq.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street – 22nd Floor
Philadelphia, PA 19102
*Attorneys for Defendants MB Investment
Partners, Inc., Robert M. Machinist, P.
Benjamin Grosscup, Thomas Barr, Christine
Munn, and Robert Bernhard*

Edward D. Kutchin, Esq.
Kerry R. Northup, Esq.
Kutchin & Rufo PC
Two Center Plaza, Suite 620
Boston, MA 02108-1906
*Attorneys for Defendants MB Investment
Partners, Inc., Robert M. Machinist, P.
Benjamin Grosscup, Thomas Barr, Christine
Munn, and Robert Bernhard*

Michael M. Mustokoff, Esq.
Teresa N. Cavenagh, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
*Attorneys for Defendants Centre MB Holdings,
Centre Partners Managements, LLC, Lester
Pollack, William Tomai, Guillame Bebear, and
Bruce Pollack*

Mark E. Bloom
502 Park Avenue
New York, NY 10022


/s/ Joseph J. Langkamer
Joseph J. Langkamer