**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| BARRY J. BELMONT, ET AL., : | |
| : | |
| Plaintiffs, : | |
| : | |
| : | Civil Action No. 09-cv-04951 |
| - against - : | |
| : | |
| MB INVESTMENT PARTNERS, INC., : | |
| ET AL. : | |
| : | |
| Defendants. : | |

---

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT RONALD L. ALTMAN'S MOTION TO DISMISS
THE AMENDED COMPLAINT**

---

Samuel W. Silver (I.D. No. 56596)
Joseph J. Langkamer (I.D. No. 208286)
SCHNADER HARRISON SEGAL &
LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
Telephone: (215) 751-2309; 2834
Facsimile: (215) 751-2205

Alan T. Gallanty (admitted *pro hac vice*)
KANTOR, DAVIDOFF, WOLFE,
MANDELKER, TWOMEY & GALLANTY, P.C.
51 East 42nd Street
New York, New York 10017
Telephone: (212) 682-8383
Facsimile: (212) 949-5206

Dated: May 4, 2010        *Attorneys for Defendant Ronald L. Altman*

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................. ii

Argument......................................................................................................................1

    Point I:

        Plaintiffs Have Failed To Plead The
        Elements Of Their Claims Against
        Altman ........................................................................................................1

    Point II:

        Plaintiffs' Entire Remaining Argument
        -- That Altman's Alleged Failure To
        Investigate Is Sufficient To Support A
        Claim For Securities Fraud -- Is Not
        Supported By The Law Or The Allegations
        Of The Amended Complaint..............................................................6

Conclusion  ...............................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Advanta Corp. Securities Litigation*
180 F. 3d 525 (3d Cir. 1999) ...........................................................................................6

*Alpharma Inc. Securities Litigation*
372 F. 3d 137 (3d Cir. 2004) ........................................................................................6, 9

*Gabriel Capital, L.P. v. Natwest Finance, Inc.*
137 F. Supp. 2d 251 (S.D.N.Y. 2000) ...........................................................................7, 8

*Grimm v. Discover Financial Services*
2008 WL 4821695 (W.D.Pa. 2008) .................................................................................2

*Key Equity Investors, Inc. v. Sel-Leb Marketing Inc.*
2007 WL 2510385 (3d Cir. 2007) ...................................................................................6

*Lautenberg Foundation v. Madoff*
2009 WL 2928913 (D.N.J. 2009) ....................................................................................9

*Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*
652 F. Supp. 2d 576 (E.D. Pa. 2009) ..............................................................................3

*Nathel v. Siegal*
592 F. Supp. 2d 452 (S.D.N.Y. 2008) .............................................................................8

*Norvergence, Inc.*
384 B.R. 315 (Bkr. D.N.J. 2008) .................................................................................2, 3

*Morena v. South Hills Health System*
501 Pa. 634, 462 A.2d 680 (1983) ..................................................................................3

*Schuster v. Anderson, F.H.*
413 F. Supp. 2d 983 (N.D. Iowa 2005) ...........................................................................8

*Securities Exchange Commission v. Asset Recovery and Management Trust, S.A.*
2008 WL 4831738 (M.D. Ala. 2008) ..............................................................................8

*Securities Exchange Commission v. Cohmad Securities Corp.*
2010 WL 363844 (S.D.N.Y. 2010) ............................................................................7

*South Cherry Street, LLC v. Hennessee Group LLC*
573 F.3d 98 (2d Cir. 2009) .........................................................................................9

*Suprema Specialties, Inc. Securities Litigation*
438 F.3d 256 (3d Cir. 2006) .......................................................................................7

*United States Securities and Exchange Commission v. Infinity Group Company*
212 F.3d 180 (3d Cir. 2000) .......................................................................................8

*Werner v. Werner*
267 F.3d 288 (3d Cir. 2001) .......................................................................................9

**Statutes and Court Rules**

 Federal Rule of Civil Procedure 12(b)(6) ................................................................1

Defendant Ronald L. Altman ("Altman"), submits this reply memorandum in further support of his motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims asserted against him in Plaintiffs' Amended Complaint and, more specifically, to address certain matters raised in Plaintiffs' Consolidated Memorandum Of Law In Opposition To Defendants' Motions To Dismiss The Amended Complaint (the "Opposition").

## ARGUMENT

### POINT I
### Plaintiffs Have Failed to Plead the Elements
### of Their Claims Against Altman

In an effort to mask the infirmities of their Amended Complaint, Plaintiffs fill their Opposition with exaggerations and overstatements of the law and the facts, including of the actual allegations of their own Amended Complaint, and with generalizations and undifferentiated group allegations with respect to defendant Altman.  Indeed, upon closer examination, Plaintiffs' Opposition reveals that the Amended Complaint is the very type of pleading for which the PSLRA and the holdings of the United States Supreme Court in *Iqbal, Twombly* and *Tellabs* require dismissal.  As demonstrated in Altman's initial Memorandum of Law in Support of his Motion to Dismiss the Amended Complaint ("Memorandum"), Plaintiffs have failed to plead specific facts with respect to each plaintiff and Altman, individually, to support any of their claims against him.

With respect to plaintiff Gary O. Perez, there is not a single allegation in the Amended Complaint, or argument offered in the Opposition, that he ever met Ronald Altman, spoke with him, received any representations or information from him, had any relationship with him of any kind, or relied on him in any manner, let alone with respect to an investment in North Hills. While Plaintiffs simply ignore these undisputed facts in their Opposition, relying instead on

conclusory allegations and the unsupported use of the *plural* "Plaintiffs", pursuant to the controlling case law and statutory authorities, all of the claims asserted by Perez against Altman must be dismissed.[1]  *See, e.g., In re Norvergence, Inc.*, 384 B.R. 315, 363 (Bkr. D.N.J. 2008) ("in cases involving multiple plaintiffs that are not certified as class actions, the specificity requirement must be met with respect to *each* individual plaintiff").

With respect to plaintiff Frances R. Kelly, there again is not a single allegation in the Amended Complaint, or argument offered in the Opposition, that at or before the time she made her complained-of investment in North Hills (Amended Complaint ¶63), Kelly ever met with Ronald Altman, spoke with him, received any representations or information from him, had any relationship with him of any kind, or relied on him in any way in connection with the investment in North Hills. In the absence of plaintiff Kelly pleading any of these facts, she cannot state a claim against Altman and all of her claims against him must be dismissed.

Indeed, standing as a stark demonstration of Plaintiffs' insufficient pleading, the only allegation offered as to Frances Kelly is that MB "became" her investment advisor and that Altman, at MB, had responsibility for her investment portfolio. (Amended Complaint ¶28). This lack of required specificity is not inadvertent.  Plaintiffs' purposeful failure to identify *when* this alleged relationship arose is for good reason, because Kelly had no professional relationship with Altman at or before the time she made her complained-of investment in North Hills. According to the Amended Complaint, Frances Kelly's investments in North Hills occurred in February and June of *2007* (Amended Complaint at ¶63), but she did not actually enter into any relationship with MB or Altman until October 31, *2008* (the undisclosed date of the Agreement between

---

[1] This includes the purported claims brought under the UTPCPL and for breach of fiduciary duty.  Absent any allegation of a duty or any relied upon representation concerning the complained-of investment, there cannot be any actionable breach or violation of that Pennsylvania statute. *See, e.g. Grimm v. Discover Financial Services,* 2008 WL 4821695 (W.D.Pa. 2008).

2

Kelly and MB referenced in Plaintiffs' Amended Complaint at ¶28), over a year and one half *after* she made the complained-of investment.[2] *In re Norvergence, Inc.,* 384 B.R. 315, 353 (Bkr. D.N.J. 2008), *quoting, Morena v. South Hills Health System,* 501 Pa. 634, 642, 462 A.2d 680 (1983)("duty, in any given situation, is predicated on the relationship existing between the parties *at the relevant time*"). Plaintiffs' attempt to cover up this missing element of their claim through vague and conclusory averments and undelineated group pleading further requires dismissal of Frances Kelly's claims against Altman under the PSLRA and the controlling decisions of the United States Supreme Court and the Third Circuit.[3]

With respect to plaintiff Thomas Kelly, there again is not a single allegation in the Amended Complaint, or argument offered in the Opposition, that at or before the time of his investment in North Hills, he ever met with Ronald Altman, spoke with him, received any representations or information from him, had any relationship with him of any kind, or relied on Altman in any way in connection with his investment in North Hills.[4] No representations, no discussions, no meetings, no reliance, and no relationship of any kind at the time of the complained-of investment are alleged by Kelly. As a result, all claims brought by Thomas Kelly against Altman must likewise be dismissed.[5]

---

[2] The Court may consider the actual date of the Investment Advisory Agreement between MB and Kelly on this Motion to Dismiss since such documentation is specifically referenced and relied upon by Plaintiffs in the Amended Complaint (Amended Complaint ¶28). *See Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.,* 652 F.Supp.2d 576, 584 (E.D. Pa. 2009); *In re Norvergence, Inc.,* 384 B.R. 315, 352 (Bkr. D.N.J. 2008).

[3] *See* Footnote 1, *supra*.

[4] As is the case with Frances Kelly, the only unspecified allegation offered by plaintiff Thomas Kelly is that MB "became" Kelly's investment advisor and Altman had responsibility for Kelly's investment portfolio. (Amended Complaint ¶28). But the Amended Complaint again does not identify when this relationship arose, because there was no such relationship between Kelly and Altman at the time of Kelly's complained-of investments in North Hills. (Amended Complaint ¶63).

[5] *See* Footnote 1, *supra*.

With respect to plaintiff PFS, Plaintiffs likewise fail to allege any specific facts concerning Altman that satisfy the elements of any of the claims PFS asserts against him. There is not a single factual allegation that PFS had any advisory or other relationship with Altman. Absent such an allegation, all of Plaintiffs' arguments in its Opposition regarding Altman's alleged duties and failures (arguments that otherwise have no merit as demonstrated in the Memorandum and below), clearly have no application to plaintiff PFS.

The Amended Complaint also fails to allege that Altman had any discussions or made any representations that PFS plausibly relied upon in making its complained-of investment in North Hills. The only contact alleged is a single meeting sometime in June, *2006* with John Wallace, who is elsewhere alleged to be the sole member of PFS (Amended Complaint ¶ 26). There is no allegation, however, that Wallace was representing PFS in that meeting or that PFS was even mentioned or discussed. Even more to the point, the Amended Complaint later explicitly and necessarily admits that the only complained of purchases by PFS occurred in September and November of *2008*, over two years *after* the alleged meeting with Wallace. It is implausible that anything said by Altman in 2006 could have led to the purchases by PFS over two years later, particularly in light of Plaintiffs' allegations that in the interim, "throughout 2008, Mark Bloom solicited John Wallace … to make an investment in North Hills out of funds belonging to PFS." (Amended Complaint ¶ 30). All of the claims asserted against Altman by plaintiff PFS likewise must be dismissed.[6]

All of the foregoing not only demonstrates that each of these plaintiff's claims must be dismissed, but also reflects the degree to which all of Plaintiffs' claims – and their arguments set forth in their Opposition -- are characterized by vague, conclusory and undifferentiated group

---

[6] *See* Footnote 1, *supra*.

allegations that are not in any way supported by the actual factual allegations of the Amended Complaint as required by the controlling authorities. These facts further demonstrate that not only was it Bloom and Bloom alone that committed the covert embezzlement that caused Plaintiffs' alleged losses, but it was Bloom and Bloom alone that ran and controlled North Hills, and it was Bloom and Bloom alone who allegedly induced Plaintiffs to invest in his fund.

With respect to plaintiff Belmont (and all of the Plaintiffs), each of the claims asserted against Altman are not only unsupported by the factual allegations of the Amended Complaint, but are completely implausible on their face. It is undisputed that Altman was not part of any fraud, had no involvement with North Hills, had no knowledge of any such wrongdoing, and did not benefit in any manner from the alleged fraud. Indeed, all of Plaintiffs' claims against Altman, including the remaining claims asserted by plaintiff Belmont, must be dismissed for at least the following reasons as further demonstrated in Altman's Memorandum:

1. There still[7] is not a single allegation that Altman had any knowledge whatsoever of any fraud or wrongdoing, which Plaintiffs do not, and cannot, dispute (Opposition at 26 - 28);

2. There still is not a single allegation that Altman had any knowledge or notice that any statements he allegedly made were false,[8] which Plaintiffs do not, and cannot, dispute (Opposition at 26 – 28);

3. There still is not a single allegation that Altman benefited in any way from the alleged fraudulent wrongdoing, which Plaintiffs do not, and cannot, dispute (Opposition at 24 - 30);

4. Altman remains the only defendant *not* charged with a failure to supervise Bloom (Amended Complaint Counts III and IV);

---

[7] The Amended Complaint, of course, represents Plaintiffs' *second* attempt to plead cognizable claims against Altman.

[8] It should again be noted that Altman denies making even those limited statements alleged in the Amended Complaint.

5.  Altman has never been implicated, let alone charged, in any of the criminal proceedings brought against Bloom, the lone person responsible for the covert embezzlement scheme alleged to have caused Plaintiffs their losses; and

6.  There is no basis in law or in fact to find a claim against Altman based on Plaintiffs' conclusory allegations that he should have conducted due diligence to uncover Bloom's covert fraud. A detailed review of the case law cited by Plaintiffs in their Opposition and that set forth in Altman's Memorandum makes clear that Plaintiffs' attempt to state a claim based solely on Altman's alleged failure to investigate, does not plead the required recklessness amounting to "an extreme departure from the standards of ordinary care"[9] necessary to satisfy the elements of a claim for securities fraud.

As hard as Plaintiffs try to paint Altman as a wrongdoer through truly outrageous conclusory and completely unsupportable allegations, *e.g.*, calling him an "accessory" to Bloom (Opposition at 2), the fact remains that there are no factual allegations in the Amended Complaint that plausibly state a claim against Altman.

## POINT II
### Plaintiffs' Entire Remaining Argument -- That Altman's Alleged Failure To Investigate Is Sufficient To Support A Claim For Securities Fraud -- Is Not Supported By the Law or the Allegations of the Amended Complaint

Through all of their voluminous Opposition, it is clear that Plaintiffs' entire basis for asserting any claim against Altman is the argument that Altman had a duty to investigate and his failure to do so (and presumably to uncover Bloom's covert embezzlement scheme), amounts to sufficient recklessness to constitute scienter under the securities laws. Not only does Plaintiffs'

---

[9] *See In re Advanta Corp. Securities Litigation*, 180 F. 3d 525, 535 (3d Cir. 1999); *In re Alpharma Inc. Securities Litigation*, 372 F. 3d 137, 149 (3d Cir. 2004); *Key Equity Investors, Inc. v. Sel-Leb Marketing Inc.*, 2007 WL 2510385 (3d Cir. 2007).

argument fly in the face of the controlling case law presented in Altman's Memorandum[10], but it is belied by the case law cited in Plaintiffs Opposition on which they purport to rely:

- In their Opposition, Plaintiffs make much of Altman's quotation from *Securities Exchange Commission v. Cohmad Securities Corp.*, 2010 WL 363844 (S.D.N.Y. 2010)(*see* Opposition at 24 -25). However, it is Plaintiffs who omit the very next sentence of the quoted passage that represents the controlling portion of the Court's decision, namely "[i]n other words, one who conducts normal business activates while ignorant that those activities are furthering a fraud is *not* liable for securities fraud." *Id*. The Court in *Cohmad dismissed* all of the securities fraud claims asserted.

- Plaintiffs' reliance on the Third Circuit's decision in *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256 (3d Cir. 2006), similarly is misplaced. Once again, Plaintiffs' quotation of the holding in the case stops too soon. In fact, in *dismissing* securities fraud claims such as these, the Court held:

> Our review of the SSF Plaintiffs' allegations confirms the District Court's conclusion that they failed adequately to allege scienter. The breaches alleged are, at best, negligent breaches of the duty to investigate. *Id.* at 282.

- Likewise, in *Gabriel Capital, L.P. v. Natwest Finance, Inc.,* 137 F. Supp. 2d 251 (S.D.N.Y. 2000), relied upon by Plaintiffs, the Court again *granted* a motion to dismiss under reasoning equally applicable here:

> Third-party plaintiff fails to cite a single case that requires an investment advisor to conduct an independent investigation as to the accuracy of the statements made in an offering memorandum when there is nothing that is obviously suspicious about those statements. In the absence of such allegations, the third-party defendants could not have "failed to review or check information that they had a *duty* to monitor." *Id.* at 262.

---

[10] See Memorandum at pp. 12 - 17.

> An investment advisor is retained to suggest appropriate investments for its clients, but is not required to assume the role of accountant or private investigator and conduct a thorough investigation of the accuracy of the facts contained in the documents that it analyzes for the purpose of recommending an investment. *Id.* at 263.

The other cases cited by Plaintiffs are equally unavailing. By way of example:

- In *United States Securities and Exchange Commission v. Infinity Group Company,* 212 F.3d 180 (3d Cir. 2000), the Court reiterated that recklessness under the securities laws can only be found based on "highly unreasonable conduct, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care …" and, in that case, only upon specific allegations that defendants had provided "guarantees" of promised results, had particular documentation and information available to them that proved their guarantees untenable, and were the very persons responsible for the fraudulent materials and the underlying ponzi scheme. *Id.* at 191-194. Here, no such allegations are, or can be, made with regard to Altman.

- In *Schuster v. Anderson, F.H.,* 413 F. Supp. 2d 983 (N.D. Iowa 2005) also relied upon by Plaintiffs, the defendants were alleged to have pocketed the money invested by their clients.

- In *Securities Exchange Commission v. Asset Recovery and Management Trust, S.A.,* 2008 WL 4831738 (M.D. Ala. 2008), the claims were asserted against the principal of the "sham" investment vehicle itself who "intentionally" committed the fraud at issue.

- In *Nathel v. Siegal,* 592 F. Supp. 2d 452 (S.D.N.Y. 2008), the allegations were again against the principals of the fraudulent investment vehicle who were specifically alleged to have had access to materials that contradicted their representations.

- In *Lautenberg Foundation v. Madoff,* 2009 WL 2928913 (D.N.J. 2009), the defendant not only was alleged to have been responsible for the day-to-day operations of the entity that was committing the fraud, but was privy to documentation that confirmed the fraud.

No such allegations exist in the Amended Complaint against Altman, who not only is acknowledged to have had no role in North Hills and to have gained no benefit from the alleged fraud, but is not alleged to have had access to any specific materials that would have placed him on notice of Bloom's covert embezzlement scheme. In fact, Plaintiffs explicitly admit in their Amended Complaint that Bloom, and Bloom alone, ran, controlled and managed the North Hills fund (Amended Complaint ¶¶ 33 - 35) and Bloom, and Bloom alone, committed, was responsible for, and benefited from, the embezzlement scheme (Amended Complaint ¶¶ 35, 42-43,47).

Plaintiffs tellingly do not, and cannot, even attempt to address the controlling precedents set forth in Altman's Memorandum to the effect that a failure to investigate or allegations of mismanagement do not amount to the type of recklessness -- a state of mind approximating actual intent -- necessary to state a claim. (Memorandum at 10 -17). *See, e.g., Alpharma Inc. Securities Litigation,* 372 F.3d 137 (3d Cir. 2004) "fraud cannot be inferred simply because [defendant] might have been more curious"); *Werner v. Werner,* 267 F.3d 288 (3d Cir. 2001)("claims grounded in breach of fiduciary duty or improper management are not actionable under Section 10(b) or Rule 10b-5"); *South Cherry Street, LLC v. Hennessee Group LLC,* 573 F.3d 98 (2d Cir. 2009)(failure to conduct required due diligence or investigate conduct of others does not amount to securities fraud).

In short, Plaintiffs' claims against Altman come down to their conclusory allegation that he failed to conduct due diligence sufficient to uncover *Bloom's* covert embezzlement scheme regarding an investment fund in which Altman admittedly had no role and from which he

9

admittedly did not benefit in any way. Under such circumstances, none of the Plaintiffs has stated a claim for securities fraud (*see* Memorandum at 7 - 20), for a violation of the UTPCPL (Memorandum at 20 - 21), or for breach of fiduciary duty (Memorandum at 22 - 23).

## CONCLUSION

Plaintiffs' Opposition does not refute, and in fact confirms, that the absence of necessary factual averments in Plaintiffs' Amended Complaint, and the pleading and legal standards required by the authorities set forth above and in Altman's initial Memorandum of Law, require the dismissal of Plaintiffs' claims against Altman. Plaintiffs have now had multiple opportunities to allege plausible claims against Altman. They have not done so, because none exist. It therefore is respectfully submitted that all of Plaintiffs' claims against defendant Ronald L. Altman should be dismissed with prejudice in their entirety.

Dated: May 4, 2010

Respectfully submitted,

/s/ Samuel W. Silver_____
Samuel W. Silver (I.D. No. 56596)
Joseph J. Langkamer (I.D. No. 208286)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street
Suite 3600
Philadelphia, Pennsylvania 19103-7286
(215) 751-2309

Alan T. Gallanty (admitted *pro hac vice*)
KANTOR, DAVIDOFF, WOLFE, MANDELKER,
TWOMEY & GALLANTY P.C.
51 East 42nd Street, 17th Floor
New York, New York 10017
(212) 682-8383

*Attorneys for Defendant Ronald L. Altman*

**CERTIFICATE OF SERVICE**

I, Samuel W. Silver, hereby certify that on this 4th day of May, 2010, I caused a true and correct copy of the foregoing Defendant Ronald L. Altman's Reply Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint to be served on the following persons via ECF (with the exceptions of Mark E. Bloom, Anthony Albanese, Esq., John B. Strasburger, Esq., and Michael Firestone, Esq.) and first-class mail:

Joseph R. Loverdi, Esq.
Paul C. Madden, Esq.
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 South 16th Street, Suite 3200
Philadelphia, PA 19102
*Attorneys for Plaintiffs*

Peter J. Hoffman, Esq.
Maureen P. Fitzgerald, Esq.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street – 22nd Floor
Philadelphia, PA 19102
*Attorneys for Defendants MB Investment Partners, Inc., Robert M. Machinist, P. Benjamin Grosscup, Thomas Barr, Christine Munn, and Robert Bernhard*

Edward D. Kutchin, Esq.
Kerry R. Northup, Esq.
Kutchin & Rufo PC
Two Center Plaza, Suite 620
Boston, MA 02108-1906
*Attorneys for Defendants MB Investment Partners, Inc., Robert M. Machinist, P. Benjamin Grosscup, Thomas Barr, Christine Munn, and Robert Bernhard*

Anthony Albanese, Esq.
John B. Strasburger, Esq.
Michael Firestone, Esq.
Weil Gotshal & Manges, LLP
767 Fifth Ave.
New York, NY 10153
*Attorneys for Defendants Centre MB Holdings, Centre Partners Managements, LLC, Lester Pollack, William Tomai, Guillame Bebear, and Bruce Pollack*

Michael M. Mustokoff, Esq.
Teresa N. Cavenagh, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
*Attorneys for Defendants Centre MB Holdings, Centre Partners Managements, LLC, Lester Pollack, William Tomai, Guillame Bebear, and Bruce Pollack*

Mark E. Bloom
502 Park Avenue
New York, NY 10022

/s/ Samuel W. Silver
Samuel W. Silver